**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br>MARK R. JOHNSTON,<br>　　　　　Debtor.<br><br><br>LISA A. SCHUMACHER,<br>MARK R. JOHNSTON,<br>　　　　　Plaintiff,<br>　　v.<br>MARK R. JOHNSTON,<br>　　　　　Defendant. | Case No. 14-00131<br>Chapter 7<br>Judge Eugene R. Wedoff<br><br><br><br><br><br>Adv. Pro. No. |

## ADVERSARY COMPLAINT

Plaintiff-Creditor LISA A. SCHUMACHER, by and through her attorneys, Gardiner Koch Weisberg & Wrona, as for her Complaint against Defendant-Debtor MARK R. JOHNSTON respectfully alleges:

### JURISDICTION AND VENUE

1.　　This Complaint is an adversary proceeding within the meaning of Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure in that it seeks a finding that Johnston's obligations to Lisa Schumacher not discharged by virtue of Johnston's bankruptcy.

2.　　Jurisdiction of this Court is predicated on 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3.　　Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1409(a).

1

## THE PARTIES

4. On January 3, 2014, Johnston filed a voluntary petition (the "Petition") for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois.

5. On February 19, 2014, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting").

6. Plaintiff is a judgment creditor of the Debtor.

## BACKGROUND

### A. Metrotech II

7. On or around August 25, 1996, Johnston and Joseph G. Offerman, Plaintiff's former spouse, entered into an Agreement of Partnership for Metrotech Properties Partnership II ("Metrotech II"), attached hereto as Exhibit A.

8. Metrotech II was formed for the purposes of acquiring certain improved real property located at 3249 N. Lakewood Street in Chicago, Illinois, (the "Lakewood Property") and leasing it to various tenants.

9. As reflected in the First Amendment to Agreement of Partnership, on or around January 1, 2001, Schumacher acquired a 25% share of the partnership. (See First Amendment attached hereto as Exhibit B).

10. Schumacher and her former spouse each made capital contributions of $25,200.00 to the Metrotech II partnership. On or around September 1, 2002, Schumacher acquired Offerman's share of the partnership, resulting in Schumacher and Johnston each having a 50% ownership interest in the Metrotech II partnership. (See Second Amendment attached hereto as Exhibit C).

11. As reflected in the Second Amendment to the Partnership Agreement, Johnston only made a capital contribution of $8,000.00 based on his representation that he would "provide ongoing management and leasing of the Property and construction management, as necessary."

12. From September 1, 2002 until the present, Schumacher and Johnston have each owned 50% of the partnership interest in Metrotech II and 50% of the improved Lakewood Property.

13. At all times relevant hereto, the Lakewood Property was owned by Johnston and Schumacher as tenants in common.

14. Defendant Johnston was the sole individual authorized to act as Managing Partner of Metrotech II in relation to the Lakewood Property. Johnston had exclusive control over and access to all bank accounts, books, records, and documents. Johnston had exclusive control over and contact with all leases and tenants. Johnston had exclusive control over the physical Lakewood property, to the exclusion of Schumacher. Johnston retained sole access to all computer files and financial information. As a result of the foregoing, Johnston held a position of ascendency over Schumacher, which in part gave rise to the existence of a fiduciary duty on Johnston's part.

B. **Metrotech 5**

15. On or around June 7, 2001, Defendant, Plaintiff, and another unrelated entity entered into an Agreement of Partnership for Metrotech Properties Partnership 5 ("Metrotech 5")(Agreement attached hereto as Exhibit D).

16. Metrotech 5 was formed for the purposes of acquiring certain improved real property located at 2330 N. Southport Avenue in Chicago, Illinois, (the "Southport Property") and leasing it to various tenants.

3

17. From June 7, 2001 to dissolution of Metrotech 5 in June 2008 via sale of the Southport Property, Defendant owned 50% of the partnership interest in Metrotech 5.

18. From June 7, 2001 until dissolution of Metrotech 5, Plaintiff owned 25% of the partnership interest in Metrotech 5.

19. At all times relevant hereto, Defendant was Managing Partner of Metrotech 5.

20. From June 7, 2001 until dissolution of Metrotech 5 in June 2008, Defendant, and any accountants employed by Defendant or Metrotech 5, handled all bookkeeping and recordkeeping for Metrotech 5.

C. **Metrotech Belmont**

21. On or around August 23, 2002, Defendant and Plaintiff formed Metrotech Belmont Corporation ("Metrotech Belmont").

22. Metrotech Belmont was formed for the purposes of acquiring certain improved real property including property located at 2852-54 West Shakespeare in Chicago, Illinois (the "Shakespeare Property"), and leasing it to various tenants.

23. From August 23, 2002 to June 26, 2008, Defendant owned 50% of the issued and outstanding shares in Metrotech Belmont.

24. From August 23, 2002 until the sale of the Shakespeare property on June 26, 2008, Plaintiff owned 50% of the issued and outstanding shares in Metrotech Belmont.

25. At all times relevant hereto, Defendant was the sole director of Metrotech Belmont.

26. From August 23, 2002 to June 26, 2008, Defendant, and any accountants employed by Defendant or Metrotech Belmont, handled all bookkeeping and record-keeping for Metrotech Belmont.

4

**D. <u>State Court Litigation</u>**

27. After years of receiving no distributions or information from Johnston related to the Metrotech partnerships and the Lakewood, Southport and Shakespeare Properties (collectively, the "Partnership Properties") despite persistent requests for same, Schumacher filed a lawsuit against Johnston in the Circuit Court of Cook County, Chancery Division, which was pending under the caption and docket number of *Schumacher v. Johnston*, 10 CH 44116. The complaint in the Circuit Court stated causes of action for accounting, breach of fiduciary duty, breach of "Agreement of Partnership," and disassociation ("state court claims"). (See copy of First Amended Complaint attached hereto as Exhibit E).

28. Schumacher's state court complaint sought to recover money damages for the debts that Johnston owed Schumacher related to her state court claims.

29. During the state court litigation, the parties engaged in motion practice, exchanged discovery, and participated in mediation sessions with Judge James Henry. However, Johnston continued to exhibit obstructive behavior to the point that sanctions were assessed against Johnston by Judge Rodolfo Garcia on August 27, 2013. (See copy of order attached hereto as Exhibit F).

30. Because of Johnston's obstructive behavior and repeated refusal to provide financial documents regarding the Partnership Properties at issue, Judge Henry was unable to resolve the matter, and as a result made a clear finding that "Def. Johnson failed to mediate in good faith. Did not deliver to mediator or other party all documentation to settle matter." (See order entered by Judge Henry attached as Exhibit G).

31. The state court litigation was still pending when Johnston filed his bankruptcy petition on January 3, 2014.

5

## COMMON FACTUAL ALLEGATIONS

32. Defendant Johnston owes Plaintiff a debt for his breach of fiduciary duty, his fraud and defalcation while acting in a fiduciary capacity, his embezzlement, his false representations, and his history of willful and malicious injuries to the Plaintiff.

33. At all times relevant hereto, by virtue of their partnership relationship and arrangement whereby Johnston was to manage the Partnership Properties, there existed a fiduciary relationship between Johnston and Schumacher.

34. As set forth below, Johnston breached his fiduciary duty owed to Schumacher, and engaged in actions amounting to those recognized as nondischargeable under 11 U.S.C § 523(a)(2)(A), 523(a)(4), and 523(a)(6), when he engaged in the following acts, among others:

   a) Maliciously and willfully failed to distribute to Plaintiff rental profits from the Partnership Properties that were owed to her;

   b) Maliciously and willfully failed to pay the Schumacher her full portion of the proceeds from the sale of both the Southport Property and the Shakespeare Property;

   c) Maliciously and willfully spent vast amounts of partnership funds on personal expenses and transferred certain sums of money generated by the Partnership Properties to his personal accounts and/or unknown accounts;

   d) Made numerous undocumented withdrawals of cash from the partnerships' bank accounts;

   e) Siphoned partnership assets to pay his personal expenses and pay other insiders including his wife while failing to pay the partnerships' justly due debts;

   f) Failed to maintain even the most rudimentary corporate records, including a bank account register, an accounts payable ledger, records of invoices and payments, a balance sheet, and a profit and loss statement;

   g) Maliciously and willfully failed to grant Plaintiff access to the books, records, and financial documents for the partnerships and properties, or provide information regarding the location of same;

   h) Provided inaccurate or incomplete financial information to Plaintiff that resulted in Plaintiff paying additional, unnecessary income taxes;

6

i) Improperly obtained a loan with a prepayment penalty in relation to the Shakespeare Property;

j) Failed to monitor construction and conditions surrounding the Lakewood Property and the adjoining property so as to prevent the Lakewood Property from leaning on the adjacent property, when the Defendant knew that such action was necessary to prevent injury to Plaintiff;

k) Failed to properly address potential structural issues concerning the Lakewood Property when the Defendant knew that such action was necessary to prevent injury to Plaintiff, resulting in the inability to close on two contracts to sell the Lakewood Property, both of which were for more than $800,000;

l) Maliciously and willfully failed to pay the rent for his own personal use of the Lakewood Property;

m) Loaned $35,878.33 of partnership funds to an "affiliate" prior to December 2008 without authority, Plaintiff's approval or proper loan security;

n) Failed to make timely tax and mortgage loan payments including over 20 late payments on the Lakewood mortgage, which resulted in significant harm to Plaintiff's credit, to the extent that Plaintiff has been unable to successfully obtain a refinance on her personal property, despite several attempts;

o) Upon information and belief, incurred late fees, service fees, and interest due to delinquent payments, including approximately 20 late payments on the mortgage related to the Lakewood Property;

p) Permitted his wife to hold herself out as the "lone operator of Metrotech" and accept rental payments from tenants residing at the Lakewood Property, without the permission of Schumacher.

35. At all times relevant hereto, Johnston was in control of the Partnership Properties to the exclusion of Schumacher.

36. On numerous occasions, Plaintiff attempted to exercise her statutory rights under the Uniform Partnership Act of the State of Illinois, 805 ILCS 205 et seq, and her rights pursuant to the parties' partnership agreements, so that she could inspect the books, records, and finances of the property, but Johnston refused all such requests and would not provide information to Plaintiff about the location of the partnership records.

## COUNT I -- SECTION 523(a)(2)(A)
### (False Pretenses, False Representation, and Actual Fraud)

37. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 36 of this Complaint as if set forth at length herein.

38. Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -- (A) false pretenses, a false representation or actual fraud". 11 U.S.C. § 523(a)(2)(A).

39. All or part of the debt owed by Johnston to Plaintiff is non-dischargeable as it is a debt that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code §523(a)(2)(A).

40. In order to induce Schumacher to partner with him and invest in the partnerships, and in order to keep Schumacher from terminating the partnerships, Johnston continually made false representations and/or omitted material facts including but not limited to those relating to his real estate background, his intention to allow Plaintiff complete access to the partnerships' books and records, his qualifications to manage the Partnership Properties, his proper maintenance of corporate records, the whereabouts of corporate and financial records, his comingling or misappropriation of partnership assets, his attention to the progress on construction of neighboring properties, and other material matters.

41. Because Schumacher made monetary investments in the Partnership Properties based on her reliance of certain false representations, and because for a significant period of time, she made the decision to not terminate the partnership as a result of her reliance on Johnston's false representations, the false representations therefore constitute the factual cause of the debt that Johnston owes to Schumacher.

42. Johnston made these ongoing representations knowing that they were false, or in reckless disregard for their truth.

43. Johnston made these representations or omissions with the intent to deceive Schumacher and cause harm to her.

44. Schumacher justifiably relied on Johnston's representations and omissions and suffered pecuniary damages as a result.

### COUNT II -- SECTION 523(a)(4)
### (Fraud and Defalcation While Acting as a Fiduciary)

45. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if set forth at length herein.

46. Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt arising from "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4).

47. By virtue of their business relationship whereby Johnston managed the Partnership Property and the partnership finances and thus maintained a position of ascendency over Schumacher, and by virtue of the parties' and joint partnership interests in Metrotech II, Metrotech V, and Metrotech Belmont, Johnston and Schumacher had a pre-existing fiduciary relationship.

48. Schumacher entrusted her money and the management of her interest in the Partnership Properties to Johnston.

49. Johnston owed Schumacher a fiduciary duty to properly account to Schumacher for all costs, rents, and purchases associated with the Partnership Properties, and to not divert partnership monies for improper use, including but not limited to use in conjunction with Johnston's personal finances or other real estate properties.

9

50. As set forth more fully above, Johnston used his position as a fiduciary to Schumacher to induce Schumacher to enter into and invest in the partnership, embezzle proceeds from the Partnership Properties, make material misrepresentations to Schumacher about the Partnership Properties, cover up unauthorized transfers to or for the benefit of Johnston personally, and divert funds from their intended use for the Partnership Properties, all without Schumacher's knowledge or consent.

51. Johnston engaged in actions amounting to those recognized as nondischargeable under 11 U.S.C § 523(a)(4), and breached his fiduciary duty owed to Schumacher.

52. Johnston's breach of his fiduciary duty owed to Schumacher constituted fraud and/or defalcation.

53. As a direct and proximate result of Johnston's breach of his fiduciary duty owed to Schumacher, Schumacher suffered pecuniary damages.

### COUNT III -- SECTION 523(a)(4)
**(Embezzlement)**

54. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 53 of this Complaint as if set forth at length herein.

55. Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt arising from embezzlement. 11 U.S.C. § 523(a)(4).

56. At all relevant times hereto, any and all funds or profits derived from or related to the Partnership Properties were to be used exclusively for the purposes of maintaining the Partnership Properties and distributing the funds in equal portions to Schumacher and Johnston.

57. Schumacher entrusted Johnston to take possession of the rental proceeds from the Partnership Properties for the exclusive purpose of managing the Partnership Properties and providing subsequent equal distribution to the partners.

58. As set forth more fully above, Johnston appropriated funds related to the Partnership Properties for purposes other than those for which he was entrusted to use them, including to fund the his own personal finances and properties.

59. The improper diversion of funds which were to be used for managing the Partnership Properties and distributing profits to the Metrotech II, Metrotech V, and Metrotech Belmont partners constitutes a conversion of Schumacher's funds.

60. Johnston converted the funds while he was acting as Schumacher's agent and fiduciary. Accordingly, the conversion constitutes embezzlement.

61. Schumacher, as an owner of the Lakewood property, a former owner of the Belmont and Shakespeare Property, and as a partner of Metrotech II, Metrotech V, and Metrotech Belmont, is the owner of her share of the profits and has a right to the immediate possession of the embezzled and diverted funds. Johnston has wrongfully retained possession and control over the embezzled and diverted funds.

62. Plaintiff had no knowledge of, and did not consent to, any diversion of funds.

63. As a direct and proximate result of Johnston's embezzlement as set forth herein, Schumacher suffered pecuniary damages.

### COUNT IV -- SECTION 523(a)(6)
### (Willful and malicious injury)

64. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 63 of this Complaint as if set forth at length herein.

65. Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity…". 11 U.S.C. § 523(a)(3).

66. Upon information and belief, acting with a conscious disregard of his own duties to Schumacher, or without just cause or excuse, Johnston deliberately and maliciously breached his fiduciary duty owed to Schumacher by embezzling partnership funds and engaging in the tortious improper acts more fully described above.

67. In taking the tortious actions described herein, Johnston acted with the specific intent to cause harm to Schumacher.

68. All or part of the debt owed to plaintiff is non-dischargeable as it is a debt for willful and malicious injury caused by the Debtor within the meaning of Bankruptcy Code § 523(a)(6).

WHEREFORE, Schumacher prays for the following relief in each Count of her Complaint:

A. Entry of a declaratory judgment finding and declaring the the indebtedness owed by Johnston to Schumacher is not dischargeable in Johnston's bankruptcy case pursuant to 11 U.S.C § 523(a)(2)(A), 523(a)(4), and 523(a)(6);

B. Entry of a money judgment in favor of Schumacher and against Johnston for recoverable compensatory damages suffered by her as a consequence of the wrongful conduct alleged in this Complaint; and

C. Entry of a money judgment in favor of Schumacher and against Johnston for punitive damages in an amount which will achieve the goals and purposes of the policies which authorize the recovery of such damages.

Respectfully submitted,

/s/ Thomas G. Gardiner
Attorney for Lisa A. Schumacher


Thomas G. Gardiner
Shannon V. Condon
GARDINER KOCH & WEISBERG & WRONA
53 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
Ph: (312) 431-1386
Fax: (312) 362-0440
Tgardiner@gkwwlaw.com
Scondon@gkwwlaw.com

**CERTIFICATE OF SERVICE**

I Shannon V. Condon, an attorney, state that I caused copies of this Adversary Complaint to be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all counsel of record electronically, on or before 11:59 p.m. on this 21st day of April, 2014.

Michael L. Ralph, Sr.
Sharanya Gururajan
Ralph, Schwab & Schiever, Chtd.
175 E. Hawthorn Pkwy, Suite 345
Vernon Hills, IL 60061
Attorney for Mark R. Johnston

Ronald R. Peterson – Trustee
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654

Patrick S. Layng – U.S. Trustee
Office of U.S. Trustee, Region 11
219 S. Dearborn Street, Room 873
Chicago, IL 60604

Jordan M. Litwin
Meltzer, Purtill & Stelle LLC
300 S. Wacker Drive, Suite 3500
Chicago, IL 60606
Attorney for American Chartered Bank

Janice Driggers
Burke & Handley
1430 Bradley Avenue , Suite 175
Downers Grove, IL 60515
Attorney for State Bank of Countryside

Mark E. Leipold
Mark E. Abraham
Gould & Ratner LLP
222 North LaSalle Street, Suite 800

Chicago, Illinois 60601-1086
mleipold@gouldratner.com
mabraham@gouldratner.com
Attorneys for Sonco Real Estate LLC

Jay R. Goldberg
Justin Newman
FIELD AND GOLDBERG, LLC
10 South LaSalle Street, Suite 2910
Chicago, Illinois 60603
Attorneys for ColFil Bulls Funding A, LLC

                By: /s/ Shannon Condon
                    Attorney for Lisa A. Schumacher

                    Thomas G. Gardiner
                    Shannon V. Condon
                    GARDINER KOCH & WEISBERG & WRONA
                    53 W. Jackson Blvd., Suite 950
                    Chicago, Illinois 60604
                    Ph: (312) 431-1386 x240
                    Fax: (312) 362-0440
                    Scondon@gkwwlaw.com